**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **CHARLES SAMUEL CRANK,** | § | |
| **TDCJ No. 02101067** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **W-19-CV-228-ADA** |
| | § | |
| **BOBBY LUMPKIN,[1] Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## ORDER

Before the Court are Petitioner Charles Samuel Crank's counseled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) and Respondent's Response (ECF No. 7). Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner's federal habeas corpus petition should be denied under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d).

## I. Background

In April 2016, Petitioner was charged by indictment with three counts of aggravated sexual assault of a child (No. 75585). (ECF No. 9-25 at 7-8.) In September 2016, Petitioner was charged in a separate indictment for continuous sexual abuse of a

---

[1] The previous named respondent in this action was Lorie Davis. Bobby Lumpkin succeeded Ms. Davis as the Director of the Texas Department of Criminal Justice, Correctional Institutions Division and is automatically substituted as a party. FED. R. CIV. P. 25(d).

child (No. 76210). (ECF No. 9-27 at 3-4.) In November 2016, a jury convicted Petitioner of

continuous sexual assault of a child and sentenced him to fifty years imprisonment. *State*

*v. Crank*, No. 76210 (426th Dist. Ct., Bell Cnty., Tex. Nov. 3, 2016.) (ECF No. 9-29 at 3-4.)

The State thereafter dismissed the aggravated sexual assault of a child charges in

indictment No. 75585. (ECF No. 9-27 at 1-2.) The following is a brief summary of the

factual allegations against Petitioner.

> A jury found appellant Charles Samuel Crank guilty of continuous sexual
> abuse of a young child for sexually abusing his biological daughter, R.L.C.,
> beginning when she was eight years old and continuing until she disclosed
> the sexual abuse to her mother at age 13.
>
> The jury heard evidence that on numerous occasions during that five-year
> period appellant perpetrated various sexual acts against his daughter,
> including making her masturbate him, making her perform oral sex on him,
> performing oral sex on her, penetrating her sexual organ with his penis, and
> penetrating her anus with his penis. Because the parties are familiar with the
> facts of the case, its procedural history, and the evidence adduced at trial,
> we do not further recite them in this opinion except as necessary to advise
> the parties of the Court's decision and the basic reasons for it.

*Crank v. State*, No. 03–16–00801–CR, 2017 WL 2729671, at *1, n.1 (Tex. App.—Austin,

June 22, 2017, no pet.) Petitioner's conviction was affirmed on appeal. *Id.* Petitioner did

not file a writ of certiorari in the United States Supreme Court. (ECF No. 1 at 3.)

On July 16, 2018, Petitioner filed a counseled state habeas corpus application,

listing the following eight grounds of relief:

> 1. Trial counsel provided ineffective assistance by failing to object to the State's
>    use of out-of-state offenses to convict Petitioner of the charged offense;
>
> 2. Trial counsel provided ineffective assistance by failing to object to extraneous
>    offenses based on lack of notice;

3. Trial counsel provided ineffective assistance by failing to object to the court's jury charge;

4. Appellate counsel provided ineffective assistance when counsel failed to raise the jury charge error on appeal;

5. Trial counsel provided ineffective assistance by failing to request notice of the extraneous offense evidence;

6. Trial counsel provided ineffective assistance by failing to object to extraneous offense evidence and by failing to request limiting instructions for it;

7. Trial counsel provided ineffective assistance by failing to investigate facts relating to the complainant's credibility; and

8. Trial counsel provided ineffective assistance by failing to interview witnesses and failing to prepare defense witnesses to testify.

(ECF Nos. 9-30 at 9 to 9-31 at 17.) On July 26, 2018, the state habeas court ordered Petitioner's trial counsel, Mr. Robert O. Harris, III, and his appellate counsel, Mr. James H. Kreimeyer, to submit an affidavit addressing these issues. (ECF No. 9-37 at 2-4.)

On November 28, 2018, and after reviewing counsels' affidavits and the habeas record, the state habeas court adopted the State's Proposed Findings of Fact and Conclusions of Law and recommended denying Petitioner's application for a writ of habeas corpus. (ECF Nos. 9-46 at 4 to 9-48 at 9.) On March 20, 2019, the Texas Court of Criminal Appeals (TCCA) denied Petitioner's application without written order on the findings of the trial court without hearing. (ECF No. 9-21.) *Ex parte Crank*, No. WR-89,275-01.

On March 27, 2019, Petitioner filed the instant federal habeas petition through counsel, raising the same claims that were raised and rejected in his state habeas application. (ECF No. 1.) On June 26, 2019, Respondent filed their response. (ECF No. 7.)

3

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102. A petitioner must show that the state court's decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state

4

court's decision." *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011). "If this standard is difficult to meet—and it is—that is because it was meant to be." *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

## III. Analysis

### A. Ineffective Assistance of Counsel

All of Petitioner's federal habeas claims are based on allegations that his trial and appellate attorneys provided ineffective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees citizens the assistance of counsel in defending against criminal prosecutions. U.S. Const. amend VI. Sixth Amendment claims based on ineffective assistance of counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense. *Id.* at 687-88, 690. The Supreme Court has emphasized that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct and a petitioner must show that counsel's performance

5

fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Ineffective assistance of counsel claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). When the state court has adjudicated the claims on the merits, a federal court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standard," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101.

### 1.  *Failure to object to out-of-state offenses*

In his first ground for relief, Petitioner claims that his trial counsel, Mr. Harris, provided ineffective assistance of counsel when he failed to object to the State's use of

two acts of alleged sexual abuse that occurred in South Korea and Louisiana as predicate offenses to convict Petitioner of continuous sexual abuse of a child. Petitioner cites *Lee v. State*, 537 S.W.3d 924 (Tex. Crim. App. 2017) for the proposition that acts of sexual abuse occurring outside of Texas cannot be used as predicate offenses necessary for a conviction of continuous sexual abuse of a child. In support of argument that the State used these offenses as predicate offenses, Petitioner argues (1) the State did not provide notice it would introduce the alleged out-of-state offenses, and notice is not required for predicate offenses; (2) Mr. Harris did not request an Article 37.38[2] hearing for the offenses, and a hearing is not required for predicate offenses; (3) Mr. Harris never requested a limiting instruction regarding the offenses, the trial court never sua sponte provided one, and defendants are not entitled to limiting instructions for predicate offenses; (4) the trial court's jury charge contained a statement suggesting the jury could consider out-of-state offenses as predicate offense; and (5) the State explicitly instructed the jury it could consider the out-of-state offenses as predicate offenses.[3] Respondent argues that the state habeas court implicitly found Mr. Harris's affidavit credible and that the court was not unreasonable in concluding this was part of Mr. Harris's trial strategy.

Mr. Harris addressed these allegations in his state habeas affidavit:

---

[2] Under Article 38.37, "evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, . . ." but before this evidence is introduced, the trial court must conduct a hearing outside the presence of the jury and determine if the evidence would support a finding that the defendant committed the separate offense beyond a reasonable doubt. TEX. CODE CRIM. PROC. ANN. art. 38.37 §§ 1(b), 2 (West 2019).

[3] Petitioner points to the following portion of the State's closing argument:

> And the 12 of you, while you need to reach a unanimous verdict, do not need to be unanimous on which two acts you believe occurred. So if you believe it was the oral sex that happened in Korea. And you believe it was the sex in the garage in Killeen, Texas, that is enough as long as those two acts happened more than 30 days in duration. More than 30 days apart. (ECF No. 9-9 at 17-18.)

[Petitioner] cites several areas where he contends that my representation was deficient, the first of which is my alleged failure to object to the State's use of out-of-state offenses to convict him of the charged offense. However, I find his contention that out-of-state offenses were charged, offered, and testified to inaccurate. In fact, I find it an improbable stretch of the facts that the victim conveyed in her statements to Fort Hood CID [Criminal Investigation Division], KPD [Killeen Police Department] and the SANE [Sexual Assault Nurse Examiner] nurse. [The complainant] stated that the sexual conduct began at Fort Polk in Louisiana and continued at Camp Casey in South Korea, but she did not offer any specific details or descriptions of the locations where these events occurred, or their frequency. Nor does the indictment in this case allege any sexual acts outside the State of Texas. In other words, to define the non-specific incidents that [the complainant] discussed in her statements to the authorities as "offenses" redefines the definition of offense.

Moreover, [the complainant] testified that [Petitioner] engaged in sexual acts fifteen (15) to twenty (20) times in the State of Texas, therefore, the instant case did not in any way rely on the incidents that occurred in South Korea and Louisiana for validity. There was arguably room for an objection when the State seemingly implied in closing argument, that the jury could convict [Petitioner] based in part on the out-of-state incidents. However, there was no ambiguity in the State's indictment because [Petitioner] was only charged with committing acts in Bell County, Texas, and the application paragraph of the Court's Charge instructed the jury to convict him only if they believed, beyond a reasonable doubt, that he committed the offense in Bell County, Texas.

(ECF No. 9-39 at 11-12.) Upon reviewing the trial record and Mr. Harris's affidavit, the

state habeas court made the following findings:

87. During direct questioning by the State, the record reflects that [the complainant] recounted in her testimony numerous acts of sexual abuse at the hands of her father that occurred inside the State of Texas.

88. The record reflects that here [the complainant] recounts an incident of abuse involving oral sex that took place at the family home in Killeen, Texas, when she was 13-years-old: . . .

89. The record reflects that here, [the complainant] recounts an incident of abuse involving alcohol and sexual intercourse that took place in the family home in Killeen, Texas, when she was 13-years-old: . . .

8

90. The record reflects that here, [the complainant] recounts incidents of sexual contact with the Applicant while camping on family owned land near Nacogdoches, Texas, in 2014 when she was 12-years-old: . . .

91. The Court finds, that unlike *Lee*, the jury in the instant case had numerous instances of sexual abuse of [the complainant] by the Applicant that occurred within the State of Texas that sufficed as "predicate offenses."

. . . .

94. In the instant case, the Court finds, that the indictment charges the Applicant with committing two or more acts of sexual abuse against the victim in Bell County, Texas, and the Court's Charge instructs the jury to find him guilty of the charged offense, only if they believe beyond a reasonable doubt, that he has committed the charged offense as alleged in the indictment.

95. The Court finds[] that the Applicant theorizes that the jury, ignoring their instructions, believed beyond a reasonable doubt only the two out-of-state acts of abuse and none of the numerous Texas acts of abuse, or only one of the Texas acts and one or both of the out-of-state acts.

96. The Court finds both these scenarios implausible, and there is no showing by the Applicant that either occurred.

. . . .

98. The Court finds that the Applicant makes no showing that the jury found beyond a reasonable doubt[] that the Applicant committed only the two out-of-state acts of sexual abuse that he cites, and none, or only one, of the Texas acts testified to by the victim.

99. Therefore, [the] Court finds the Applicant's contention that Mr. Harris should have objected to the out-of-state offenses because they were used as "predicate offenses," to the exclusion of all other acts of sexual abuse testified to by the victim, is based on conjecture and is unpersuasive.

(ECF Nos. 9-46 at 23 to 9-47 at 9.)

This Court's review of Petitioner's claim is guided by the AEDPA, under which

Petitioner must show that the state habeas court's determination was an unreasonable

application of *Strickland*. The Court concludes it was not. First, the habeas court found that evidence of several in-state predicate offenses was presented to the jury, and that Petitioner had not shown that the jury relied only on the two out-of-state offenses—disregarding the evidence of numerous in-state offense—in convicting Petitioner. The habeas court also noted that Mr. Harris chose not to object to the State's misstatement of the law at closing so as not to draw attention to the out-of-state offenses. Trial counsel has broad discretion when it comes to deciding how best to proceed strategically. *See Ward v. Stephens*, 777 F.3d 250, 264 (5th Cir. 2015) (the Supreme Court has emphasized counsel has "wide latitude in deciding how best to represent a client"). This Court is mindful that "Strickland does not allow second guessing of trial strategy and must be applied with keen awareness that this is an after-the-fact inquiry." *Granados v. Quarterman*, 455 F.3d 529, 534 (5th Cir. 2006). In other words, simply because counsel's strategy was not successful does not mean counsel's performance was deficient. *Avila v. Quarterman*, 560 F.3d 299, 314 (5th Cir. 2009).

Even if, as Petitioner argues, Mr. Harris's failure to object to the two out-of-state offenses does constitute deficient performance, Petitioner has failed to show prejudice. To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Further, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. *See also Pondexter v. Quarterman*, 537 F.3d 511, 520 (5th Cir. 2008) (finding an ineffective-assistance claim

10

may be rejected for want of either deficient performance or prejudice, and thus the absence of either prong of the *Strickland* analysis is dispositive) (citation omitted).

The state habeas court found that, despite the State's misstatement during closing argument, the indictment explicitly charged Petitioner with committing two or more acts of sexual abuse in Bell County, and the trial court's jury charge instructed the jury to find Petitioner guilty only if they believed beyond a reasonable doubt he committed the acts as alleged in the indictment. Petitioner has not shown that, but for Mr. Harris's failure to object to the two out-of-state offenses, there is a reasonable probability that the outcome of the trial would have been different. Put another way, Mr. Harris's failure to object to the out-of-state offenses is not sufficient to undermine confidence in the outcome of the trial. As a result, this Court concludes that the state habeas court's application of *Strickland* was not unreasonable, and this claim is denied.

### 2. *Failure to object to lack of notice for extraneous offenses*

In Petitioner's second claim, he argues that his trial counsel provided ineffective assistance when he failed to object to testimony relating to the out-of-state offenses on the basis that the State had not provided the required notice pursuant to Article 38.37. Petitioner argues that, because the State failed to give the required notice for the out-of-state offenses, the trial court would have excluded them had Mr. Harris objected. Petitioner argues that the testimony was harmful to Petitioner because (1) it suggested Petitioner's sexual abuse of his daughter began at an early age and (2) it strengthened the credibility of the complainant.

Mr. Harris responded to this claim as follows:

11

> [Petitioner] alleges that I should have objected to admission of the testimony regarding the Louisiana and South Korea "offenses" because they were "extraneous offenses," and the State did not provide the defense notice that it would seek to introduce them. The threshold question is whether or not the incidents in South Korea and Louisiana constituted "extraneous offenses." I did not think that they were. There was no proof, other than the testimony of the victim, offered to establish that they occurred, and there were scant details as to date and location. [The complainant]'s mother, Laura Crank Cravey, testified that she did not know of these incidents, or that they were not reported to her, therefore, other than [the complainant]'s incomplete recollections, there was no proof. Moreover, from a trial strategy standpoint, I had to determine whether my objections to issues that my client was not on trial for, would engender more scrutiny than it was worth. I decided that they would.

(ECF No. 9-39 at 13.) The state habeas court concluded that Petitioner was correct that the State was required to give notice of its intent to introduce evidence described in Article 38.37 no later than 30 days before trial. However, the court noted that Mr. Harris had been the counsel of record in Petitioner's dismissed charges for aggravated sexual assault of a child, and that the State had provided the article 38.37 notice in that case. The court further found the following:

> 107. The Court finds, that among the extraneous acts listed in the Notice were the following: (1) Attempted Indecency With a Child on or about April 2011, when the defendant asked [the complainant] to touch his sexual organ at Fort Polk, Louisiana; and (2) Aggravated Sexual Assault of a Child and Indecency With a Child on or about September or October of 2012 - September of 2014 in Dong Ducheon Gyonggi-Do Province, Korea 2014, when the defendant made [the complainant] touch his sexual organ and penetrated her mouth and female sexual organ with his sexual organ.

> . . . .

> 111. The Court finds that the indictment in the instant case derives wholly from the evidence that existed in Cause Number 75,585, in which Mr. Harris was the Applicant's attorney of record, and had been notified by the State of the two out-of-state extraneous acts that the Applicant cites, as well as other extraneous acts that the victim testified to at trial in the instant case.

112. Therefore, the Court finds that Mr. Harris had no basis to object to the admission of the extraneous acts which the Applicant cites for lack of notice.

(ECF No. 9-47 at 11.)

Petitioner argues that the habeas court's finding is unreasonable because there was no order adopting the filings from Cause Number 75585 into Cause Number 76210. (ECF No. 1-1 at 18.) However, Petitioner cites no case law supporting this proposition—i.e. that notice must be formally transferred from one case to another, even when all the parties are identical—and this Court must defer to the habeas court's interpretation of state law. *See Charles v. Thaler*, 629 F.3d 494, 500-01 (5th Cir. 2011) ("Under § 2254, federal habeas courts sit to review state court misapplications of *federal* law. A federal court lacks authority to rule that a state court incorrectly interpreted its own law.").

Further, the Court notes that "the purpose of the Article 38.37 notice provision is to enable the defendant to meet the evidence of extraneous offenses," *Lara v. State*, 513 S.W.3d 135, 143 (Tex. App.—Houston 2016), and thus even though notice was not formally filed in Cause Number 76210, due to the notice given in Cause Number 75585, Petitioner was not surprised when this evidence was introduced. Because the state habeas court concluded Petitioner had notice of the out-of-state offenses, Mr. Harris's performance cannot be deemed deficient for failing to object based on lack of notice. *See Miller v. Thaler*, 714 F.3d 897, 904 n.6 (5th Cir. 2013) (counsel is not required to make futile motions or objections); *Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir. 2012) ("the failure to lodge futile objections does not qualify as ineffective assistance") (quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)); *Ward v. Dretke*, 420 F.3d 479, 498 (5th Cir.

13

2005) (counsel not ineffective for failing to lodge what would likely have been a futile objection). Accordingly, the state habeas court's application of *Strickland* was not unreasonable, and this claim is denied.

### 3.  Failure to object to jury charge

In claim 3, Petitioner argues that Mr. Harris provided constitutionally deficient counsel when he failed to object to an error in the trial court's jury charge, pointing to the following paragraph:

> Offenses committed wholly or in part outside this State, under circumstances that give this State jurisdiction to prosecute the offender, maybe prosecuted in any county in which the offender is found or in any county in which an element of the offense occurs.

(ECF No. 9-27 at 13.) Petitioner concedes this a correct statement of the law of venue for out-of-state offenses pursuant to Texas Code of Criminal Procedure Article 13.01. However, he argues that this facially neutral jury instruction nonetheless constituted an improper comment on the weight of the evidence, and cites *Kirsch v. State*, 357 S.W.3d 645, 652 (Tex. Crim. App. 2012) in support. Petitioner argues that Mr. Harris should have objected because (1) the instruction was unnecessary as out-of-state offenses cannot constitute predicate offenses for continuous sexual abuse of a child and (2) the instruction inappropriately focused the jury on evidence relating to the out-of-state offenses. (ECF No. 1-1 at 19-20.)

During the trial court's charging conference, Mr. Harris brought the court's attention to that particular instruction and, after discussion, it was amended to reflect the

exact language of the code. (ECF No. 9-8 at 104-07.) In response to this claim, Mr. Harris

averred the following:

> [Petitioner] contends that I should have objected to the Court's Charge,
> because of a passage that instructed the jury on venue allegedly gave them
> the false impression that the out-of-state "offenses" described by [the
> complainant] in her testimony could constitute one of the predicate offenses
> necessary to establish the offense of Continuous Sexual Abuse of a Young
> Child. First, I dispute the notion that these were "offenses." Second, as he
> notes, the specific passage he cites was discussed at my urging in the
> charge conference, and the parties concluded that the instruction addressed
> venue and not evidentiary matters. Moreover, there were numerous other
> acts of sexual abuse detailed by [the complainant] during her testimony that
> occurred wholly in Bell County, Texas, which made the jury's reliance on
> out-of-state incidents as "predicate offenses" both unnecessary and
> unlikely. It is important to note that [Petitioner] cites no indication that these
> out-of-state incidents were relied upon by the jury as predicate offenses,
> only conjecture that it may have happened.

(ECF No. 9-39 at 13-14.) In its findings of fact and conclusions of law, the habeas court

found that *Kirsch* was distinguishable from Petitioner's case, that the passage concerns

issue of venue and not evidence, and then found the following:

> 122. The Court finds that the instruction set out below, which appeared in
> the Court's Charge before the cited instruction on venue, addressed directly
> how the various offenses alleged against the Applicant could be utilized by
> the jury:
>
>> "You are instructed that if there is any testimony before you in
>> this case regarding the Defendant's having committed
>> offenses other than the offense alleged against him in the
>> instant in this case, you cannot consider said testimony for any
>> purpose unless you find and believe beyond a reasonable
>> doubt that the defendant committed such other offenses, if
>> any were committed, and even then you may only consider
>> the same in determining the intent, knowledge, motive,
>> preparation or plan of the defendant, if any, in connection with
>> the offense, if any, alleged against him in the indictment in this
>> case, or for its bearing on the slate of mind of the defendant
>> and the child and the previous and subsequent relationship,

15

between the defendant and the child, and for no other purpose." See Court's Charge, pp. 2-3.

123. The record reflects, that according to the indictment, the Applicant was charged with committing various acts of sexual abuse in Bell County, Texas, between September 1, 2012 and October 24, 2015.

124. The Court finds that, since there has been no showing that the jury did not follow their instructions, it is presumed that in reaching their verdict, they found that the Applicant was guilty, beyond a reasonable doubt, of two or more of the several acts of sexual abuse alleged in the indictment, and the indictment only included acts of sexual abuse that occurred in Bell County, Texas.

125. The Court finds the Applicant's complaint that Mr. Harris's failure to object to the cited instruction was deficient performance not supported by the record.

(ECF No. 9-47 at 12-13.)

Although the record shows that Mr. Harris did express his concern with the venue paragraph during the charging conference, Petitioner apparently believes Mr. Harris's should have explicitly objected on the grounds that Petitioner cites, i.e. it gave improper weight to the out-of-state offenses. However, the state habeas court found that the jury presumably followed the instructions to convict Petitioner only if they believed beyond a reasonable doubt that he committed the charged offenses in Bell County, Texas and Petitioner has failed to show that Mr. Harris's failure to object based on the charge giving undue weight to the out-of-state offenses fell outside the bounds of prevailing professional standards. As a result, the state court's application of *Strickland* was not unreasonable, and this claim is denied.

### 4. *Failure to raise jury charge error on direct appeal*

In Petitioner's fourth claim, he argues his appellate attorney, Mr. James Kreimeyer, provided ineffective assistance when he failed to raise on appeal the jury charge issue described in the prior section. Petitioner argues that had Mr. Kreimeyer raised this issue on appeal, the appellate court would have found the error to be fundamental and caused Petitioner egregious harm, resulting in a reversal and new trial. (ECF No. 1-1 at 24-26.)

In his state habeas affidavit, Mr. Kreimeyer responded as follows:

[Petitioner] has accused me of ineffective assistance of counsel as his appellate lawyer. His claim is: the out of state offenses were necessary predicate offenses. This is patently not the case. There were more than ample predicate offenses occurring in Texas to support the allegations in the indictment.

Mr. Kreimeyer then went on to describe the in-state offenses that supported Petitioner's conviction. (ECF No. 9-37 at 6-7.)

The state habeas court denied the claim, finding the following:

171. The Court finds[] that the Applicant's allegation that Mr. Kreimeyer failed to "identify the jury charge error as an issue in his brief," begins with the underlying belief that the out-of-state offenses referenced were necessarily "predicate offenses" crucial for the conviction of the Applicant of the charged offense.

172. As Mr. Kreimeyer notes here, and as the Court has noted above, such is an incorrect view of the facts in this case, in that it totally ignores the other instances of sexual abuse that occurred within the State of Texas that were alleged in the indictment and revealed in the victim's trial testimony.

173. The Court finds[] that it follows that if the out-of-state offenses are not considered to the exclusion of all other offenses testified to by the victim, the Applicant's narrative on the weight of the evidence/jury charge error/fundamental error/reversible error is a non sequitur.

174. Therefore, the Court finds that when the entire Court's Charge and the evidence introduced in the trial of this case is examined, the Court finds the Applicant's allegation that Mr. Kreimeyer rendered ineffective assistance of counsel on appeal because he did not argue that the jury instruction constituted reversible error is not supported by the record.

(ECF No. 9-48 at 5-10.)

A criminal defendant is constitutionally entitled to effective assistance of appellate counsel when he has a right to appeal under state law. *Evitts v. Lucey*, 469 U.S. 387 (1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). The *Strickland* standard for proving ineffective assistance of counsel applies equally to both trial and appellate attorneys. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013). To obtain relief, Petitioner must demonstrate that (1) Mr. Kreimeyer's conduct was objectively unreasonable under then-current legal standards, and (2) there is a reasonable probability that, but for Mr. Kreimeyer's deficient performance, the outcome of Petitioner's appeal would have been different. *See Smith*, 528 U.S. at 285; *Higgins v. Cain*, 720 F.3d 255, 260-61 (5th Cir. 2015). To demonstrate deficiency, Petitioner must show that "counsel unreasonably failed to discover [and raise] nonfrivolous issues." *Smith*, 528 U.S. at 286. Counsel is not, however, required to "raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal." *Id.* at 288.

The Court previously concluded Mr. Harris was not ineffective when he failed to object to the venue jury instruction. Petitioner has not born his burden by showing that Mr. Kreimeyer's failure to raise the same issue on appeal was objectively unreasonable. As a

result, the Court concludes the state court's application of *Strickland* was not unreasonable and this claim is denied.

5. *Failure to request notice/object to/request limiting instruction for extraneous offense evidence*

In Petitioner's fifth and sixth claims for relief, he argues Mr. Harris provided ineffective assistance of counsel when he failed to (1) request notice of extraneous bad acts/offenses that his ex-wife testified about; (2) object to the testimony; and (3) request a limiting instruction related to the testimony. Petitioner points to testimony from his ex-wife that he had been a drug user who "wasn't willing to stop the lifestyle"; that he drank to excess and became "blackout" drunk; that after drinking excessively, he once held a knife to her throat and demanded sex; and that he stole one of her firearms. Petitioner notes that, that during cross-examination, Mr. Harris asked his ex-wife to go into further detail about these bad acts and then also questioned defense witnesses about them. Petitioner argues Mr. Harris never asked him about any bad acts his ex-wife might have discussed with the State and generally failed to investigate this issue prior to trial. (ECF No. 1-1 at 29-30.)

Mr. Harris responded by attesting that the "allegation that I failed to investigate is wholly without merit." He continued:

> [Petitioner] complains that the State eliciting derogatory testimony from witnesses about him that was "improper," and the defense should have been notified about these "extraneous offenses," and the jury should have been given a limiting instruction as to their use at trial, and in their deliberations. I disagree.

19

This testimony came mainly from Laura Crank Cravey, [Petitioner]'s ex-wife. She described how when she and my client met and started living together many years ago, they both abused drugs and alcohol. And how he once held a knife to her throat, and another time stole a firearm. But this testimony was elicited as background to help explain the circumstances and atmosphere in which [Petitioner]'s abusive behavior towards [the complainant] was born and thrived. The derogatory testimony was not only about [Petitioner], but his ex-wife too. Laura Cravey admitted to abusing drugs and alcohol also, and indeed, [the complainant] testified that alcohol played a large part in the episodes of sexual abuse that she suffered at the hand of her father. I believe that any attempt to limit this background testimony about the parties would have been rejected by the trial court as an attempt to leave the jury with the false impression that [the complainant]'s sexual abuse occurred in a vacuum. Moreover, it is apparent that this testimony was not elicited for the purpose of assassinating the character of [Petitioner], but to aid the jury in painting a picture of the atmosphere, surroundings and people who influenced [the complainant]'s world.

(ECF No. 9-39 at 14-15.) The state habeas court recommended denying these claims, finding the following:

130. First, the Court finds that Mr. Harris investigated the facts and the law in this case, which included speaking to the Applicant and his family members repeatedly about the law and the facts.

131. However, the Court finds that the fact that Mr. Harris did not ask the Applicant to reveal to him every aspect of his relationship with his ex-wife, is not a showing that he did not investigate the facts of this case.

. . . .

136. [T]he Court finds that . . . the complained of testimony here included no prior convictions or prior arrests of the Applicant, and was elicited by the State from Laura Cravey to explain when and how the Applicant started drinking again, and the effect that it had on her and [the complainant].

137. The Court finds that this evidence was not unfairly prejudicial to the Applicant, nor did it confuse the issues, mislead the jury, or appear to be offered to prove that the Applicant acted in conformity with his character, therefore, it is unlikely that an objection by Mr. Harris based on Rules of Evidence 403 or 404(b)(1) would have been sustained.

20

138. The Court notes that evidence of extraneous acts committed by a defendant have been held admissible to show the context in which the criminal act occurred, as long as the probative value outweighs its inflammatory aspects. *See Hernandez v. State*, 484 S.W.2d 754 (Tex. Crim. App. 1972).

139. Here, given the span of time covered in the instant indictment, September of 2012 to October of 2015, and the fact the extraneous acts testified to by Laura Cravey occurred subsequent to a prior episode of sexual abuse that [the complainant] had reported to her[], the Court finds, that the State was allowed to show the context in which the offense occurred through this testimony, and an objection to it, or a request for a limiting instruction by Mr. Harris, would likely not have been granted.

(ECF Nos. 9-47 at 14 to 9-48 at 1.)

*Strickland* requires counsel to undertake a reasonable investigation. 466 U.S. at 690-91; *Charles v. Stephens*, 736 F.3d 380, 389 (5th Cir. 2013). Counsel must, at minimum, interview potential witnesses and make an independent investigation of the facts and circumstances of the case. *Kately v. Cain*, 704 F.3d 356, 361 (5th Cir. 2013). In assessing the reasonableness of counsel's investigation, a heavy measure of deference is applied to counsel's judgments and is weighed in light of the defendant's own statements and actions. *Strickland*, 466 U.S. at 691. Further, a petitioner cannot "simply allege but must affirmatively prove prejudice" under *Strickland* when complaining of counsel's failure to investigate. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). A petitioner alleging that an investigation is deficient must show what the investigation would have uncovered and how the petitioner's defense would have benefited from this information. *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986).

Here, the state habeas court found Mr. Harris had completed an investigation of the law and facts related to Petitioner's case, despite not discovering the content of Petitioner's ex-wife's testimony. The court also concluded that an objection to the testimony or a request for a limiting instruction would not likely have been granted. Petitioner argues the state habeas court's findings are unreasonable because they overlook that Mr. Harris was unable to respond to this testimony based on his inadequate investigation. But the state habeas court determined that Mr. Harris had investigated the case by talking with Petitioner and other witnesses, and that his investigation was not inadequate simply because he did not uncover this testimony. Further, even if Mr. Harris's investigation was deficient, Petitioner has failed to show that he was prejudiced from this deficiency: the state habeas found it unlikely that an objection or limiting instruction to the testimony would have been granted. As a result, the state habeas court's application of *Strickland* was not unreasonable, and these claims are denied.

### 6. *Failure to investigate complainant's credibility*

In Petitioner's seventh ground for relief, he argues that Mr. Harris provided ineffective assistance of counsel when he failed to investigate the facts of the case as it related to the complainant's credibility. Specifically, Petitioner argues that a copy of the SANE report shows that the complainant denied being sexually active, but that Petitioner had personal knowledge this was false. Petitioner urged Mr. Harris to obtain the complainant's cell phone to further investigate, but Mr. Harris failed to do so.

In his affidavit, Mr. Harris responded as follows:

[Petitioner] also contends that my performance was deficient because I failed to investigate [the complainant]'s credibility. I find this allegation totally without merit. [The complainant] testified that she was not sexually active except for the constant sexual assaults from her father. [Petitioner] alleged that [the complainant] was sexually active with a young man from the neighborhood, but there was no evidence of this, except for [Petitioner]'s own musings. No reference was made by any other witness to this young man. In fact, the young man's name, nor any specific instant where he had, or was suspected of having, sexual contact with [the complainant] was ever provided to me by [Petitioner]. It appeared to me that [Petitioner]'s allegations against this young man, who was black, were racially motivated because [Petitioner] did make racially inflammatory statements to me about him, but he never cited sexual contact, or suspected sexual contact, between this young man and [the complainant].

[I] questioned several close family members, and inquired as to their relationship with [the complainant]. None of them offered me any information other than [the complainant] was truthful, and they perceived her to be a normal 13 or 14 year old girl.

(ECF Nos. 9-39 at 15 to 9-40 at 1.) The state habeas court recommended denying the

claim, finding the following:

61. The Court finds that in Mr. Harris's affidavit, he responds to the Applicant's complaint that he did not investigate [the complainant]'s credibility by noting that when they discussed [the complainant], the Applicant mentioned different subjects but provided no proof or corroboration from other sources, leaving him with no legitimate way to introduce these matters at trial, save through the Applicant's testimony, but the Applicant had already declined to testify at trial.

62. In addition, according to Mr. Harris's affidavit, the Court finds that he questioned several close family members about their relationship with [the complainant], and all of them responded that [the complainant] was a truthful, normal teenage girl.

. . . .

145. Therefore, the Court finds that according to Mr. Harris, he was without a way to present any of this evidence at trial, given the fact that the Applicant, the source, had declined to testify.

23

146. In addition, the Court finds[] that it is unclear that specific instances of [the complainant]'s past sexual behavior would have been admissible, given the restrictions imposed by Rule of Evidence 412 (Evidence of Previous Sexual Conduct in Criminal Cases).

147. In short, the Court finds that Mr. Harris did investigate the credibility of the victim, to extent possible, with the information given to him by the Applicant, but there is no showing that his performance in this area was deficient, or that further investigation would have appreciably aided the Applicant's defense.

(ECF Nos. 9-46 at 13, 9-48 at 2.)

As noted in the prior section, *Strickland* requires counsel perform an investigation but also applies heavy measure of deference to counsel's judgments. The state habeas court concluded that Mr. Harris had conducted an investigation but found no corroboration for Petitioner's claims. Petitioner also did not testify, thus handcuffing Mr. Harris in bringing Petitioner's allegations about the complainant's prior sexual activity into the trial. Finally, the state habeas court also concluded that this evidence might not have been admissible pursuant to Texas Rules of Evidence 412. Petitioner argues that evidence could have been admitted to prove the complainant's motive or bias. But this conjecture fails to show that the habeas court's recommendation "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 101. The Court concludes the state court's application of *Strickland* was unreasonable and this claim is denied.

### 7. Failure to interview and prepare defense witnesses

In Petitioner's final ground for relief, he argues Mr. Harris provided him with ineffective assistance when he failed to interview and prepare defense witnesses for trial.

Petitioner argues Mr. Harris never explained the concept of mitigating evidence or cross-examination to any of the defense witnesses. Rather, the witnesses denied the possibility that the charged offense occurred, despite also testifying they had no personal knowledge of the facts surrounding the allegations. Petitioner's mother, Sharon Crank, attested she spoke with Mr. Harris over the phone and discussed the questions he would ask her on the witness stand. However, they did not meet in person and he did not discuss the prosecutor's cross-examination or mitigating evidence. (ECF No. 9-37 at 10.) Petitioner's grandfather, Charles Densford, attested he twice met with Mr. Harris in person, but they did not discuss his testimony either time, and that Mr. Harris "assured us that he would have no problem convincing a jury that [Petitioner] had not sexually abused anyone." (*Id.* at 14-15.)

Mr. Harris responded to these allegations as follows:

> Sharon Crank, [Petitioner]'s mother, was the first defense witness I called to the stand. In preparation for her testimony, I spoke to Ms. Crank by telephone. I explained in great detail the nature of the charges against her son, . . . I assumed that Sharon Crank would be able to understand the State's questions, and give honest, straight forward answers.

> Under cross-examination by the State, Ms. Crank did become emotional on the witness stand, and she had warned me that this might occur. She had suggested that instead of her, I might want to call as a witness her partner, who she described as more being "level-headed." However, I felt that it was in [Petitioner]'s best interest to have his biological mother, imperfections and all, to testify in his defense. I do not think that Sharon Crank's testimony contributed to the length of [Petitioner]'s sentence.

>  . . . .

> I also recall a meeting with Mr. Densford and his wife where we discussed in detail the SANE report, and how it did not show any trauma to the vaginal or rectal area, therefore, it neither confirmed nor denied that the victim was

sexually active with anyone. In other words, I told them that it did not prove the State's allegations. However, I deny telling the Densfords that I would have "no problem" convincing the jury that my client had not sexually abused anyone, or that I was confident that the jury would return a verdict of not guilty. It appears that Mr. Densford may have extrapolated my comments about the SANE report to the outcome of a trial in general.

As with any witness, I advised Mr. Densford, and the rest of the defense witnesses, to tell the truth. Therefore, if he is asked during the punishment phase, on cross-examination by the State, if he believed that his grandson committed the offense, and he does not, he should tell the truth. However, it seems obvious that to state to a jury that listened to all the evidence and found someone guilty, that you still do believe that this person committed the offense might not sit well with some of the jurors. Surely a more nuanced answer like, "I don't want to believe he did it," might have been better.

But all in all, I do not believe the testimony of Mr. Densford or any of the defense witnesses affected the length of [Petitioner]'s sentence to his detriment. To the average, casual observer, like most jurors, the facts of this case were quite shocking, and if they believed the State's allegations, which they obviously did, the facts of this case alone justified a lengthy prison sentence.

(ECF No. 9-40 at 2-6.) The state habeas court recommended denying the claim, finding

the following:

156. After reviewing the totality of the defense witnesses' testimony at the trial, the Court finds that they contained no glaring irregularities that could have been avoided with additional preparation, but rather straight forward answers that, as Mr. Harris noted in his affidavit, probably had little to do with the Applicant's conviction or sentence.

157. The Court finds that the Applicant also faults Mr. Harris for not discussing the concept of mitigating evidence with the defense witnesses, and claims that each could have provided mitigating evidence on him.

158. However, the Court finds that the Applicant fails to describe this mitigating evidence, or explain how it would have affected his conviction or sentence.

26

159. To establish ineffective assistance of counsel, it is well settled that it must be demonstrated by a preponderance of the evidence, that counsel's performance was deficient, and that there is a reasonable probability that the results of the proceeding would have been different, but for counsel's performance. *See Strickland v. Washington*, 466 U.S. 668. 104 S. Ct. 2052. 80 L.Kd.2d 674 (1984).

160. Here, the Court finds that there is an insufficient showing that Mr. Harris's preparation of defense witnesses was deficient, and no showing here that the Applicant's defense was prejudiced by his actions.

(ECF No. 9-48 at 5-6.)

Petitioner argues that, had Mr. Harris prepared his defense witnesses more thoroughly and presented compelling mitigating evidence to the jury, the jury might have assessed a lighter sentence than fifty years imprisonment. However, Petitioner does not describe what mitigating evidence Mr. Harris should have uncovered or elicited from the defense witnesses. For a federal court to grant habeas relief based on a petitioner's challenge to his trial counsel's actions during the punishment phase, there must be a reasonable probability that the petitioner's non-capital sentence would have been "significantly less harsh" but for counsel's alleged errors. *Spriggs v. Collins,* 993 F.2d 85, 88 (5th Cir. 1993). Petitioner must show that, but for his counsel's allegedly deficient performance, there is a reasonable probability the results of the proceeding would have been different. Conclusory allegations cannot support a cognizable claim for relief, *see United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) ("conclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel") (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)), and Petitioner cites no evidence supporting his allegation that there was compelling mitigating evidence in his case.

Accordingly, the state court's application of *Strickland* was not unreasonable, and this claim is denied.

## IV. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327

(citing *Slack*, 529 U.S. at 484). Accordingly, the Court will not issue a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**; and

It is **FURTHER ORDERED** that no certificate of appealability shall issue in this case.

**SIGNED** on December 11, 2020

_____

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE